The next matter, case number 161060, Brian Sparia et al. v. Harleysville Worcester Insurance Company. Good morning, Your Honor. My name is John Harwood. I represent the opinion in this matter of Brian Sparia. Judge, this is a case, very briefly, that an accident occurred in March of 2012. In fact, in August of 2015, four days, there was a trial. A jury came back for the insurance company in this case. At the jury was being selected, there was a Mr. Rieger who in fact ended up on the jury and were claimed that the juror should have been disqualified and in fact never been allowed to serve. I'm familiar with the standard in the Sampson case, if I'm not mistaken. I believe the ruling party has the burden to show that the juror failed to answer questions honestly and it was a material question. It is clear, and I think everybody would agree from Judge McConnell, as well as myself and maybe even my brother, that this gentleman, Mr. Rieger, in fact was a felon and would have been disqualified. He sort of slips through the cracks of the Rhode Island jury system, but you're not saying, are you, that it was the jury clerk's responsibility to take care of this matter, that you have no obligations? Well, my attitude, Judge, is that the jury selection, the jury administrator or the jury commissioner would be the state or the federal, in fact, vets. They do a lot of the vetting that in fact determines whether or not you're eligible in the first place. So, I do believe there is some responsibility for the jury commissioner or the administrator as they say in federal court. Yes, that's my position. But also, as we went through the voir dire, which is the heart of a fair trial, we did ask the question, at least I believe upon reading the record, I asked, has anyone ever been a plaintiff or a defendant in the case? At that point in time, I will concede, because of the vetting that takes place, that when someone comes to the jury pool, he doesn't have a case that's pending as in this case. This gentleman, in fact, forgot material answers, what he did say was incorrect and what he didn't say, I believe. But Judge McConnell, in your finding, there was nothing dishonest about the way in which the juror answered your question. Now, maybe in hindsight, you wish you had reformulated the question to make it more precise, but Judge McConnell understood that what you were concerned about was a previous experience with civil trials, which is what you were involved with. Well, that's true, Judge, I did read that case, but also the Simpson case, the court held that it was very prudent for the trial justice to have an evidentiary ruling. If you look at the Simpson case, it gets into that issue about whether or not Judge McConnell, who I've known for 30 years, who I respect, Rhode Island is a small state, no doubt about it, we never had a chance to examine Mr. Rega. So whether Judge McConnell just generally said, hey, I believe he's telling the truth without a hearing, I think sort of takes away from our opportunity to cross-examine him. Why do you need an evidentiary hearing? He looked at the question that was asked and concluded that given the nature of the question, there was no obligation on the part of the defendant to stand up and say, I have been a defendant in a criminal case. That was not the question that was asked. That's true, Judge, it says, has anyone been a plaintiff or a defendant? Now, when you look at the jury questionnaire, which is by parcel, I believe under the McDonough-McDonough standard, it's my position that when he answered the jury questionnaire, the question six was, have you ever been convicted? If yes, were your civil rights, have they been restored? Not your civil right, but your civil rights. So if so, answer on page two. On page two, he answered, on page two it says, if you have a criminal record, please tell us the date of the offense. And he was close. February of 1995, that's no harmful file there. The second was the date of the conviction. He doesn't have the date down, which was 1997 in front of Judge Stoneberg, he was convicted. Excuse me, counsel, is this in service of an argument that the judge could not find that this is not an instance of dishonesty? Could the judge find that this would be an instance of dishonesty? Are you saying the judge was compelled to find this was dishonesty because of the way the jury questionnaire was filled out? Because normally we would just trust the trial judge's finding on this. So I don't know where you're going with this argument. The argument is on the second page of the jury questionnaire, the gentleman never in fact gave the information that we think is relevant to the instructions on the jury questionnaire, which we believe is part and parcel of the jury questionnaire. I believe I share some of Judge Lynch's confusion on this. You're trying to establish, I believe, that during the barbeer, this juror was dishonest. You seem to be importing into that analysis how he answered the jury questionnaire. What does his response to the jury questionnaire have to do with the question of whether he answered dishonestly in a voir dire? You're invoking the McDonough case, which has to do with voir dire, and I think you're trying to deal with the first element of it to show that he was dishonest. What does the jury questionnaire have to do with that? Well, it does because we believe the jury questionnaire is part and parcel of the voir dire process. So when he's answering the questions to the jury commissioner, because it specifically says, give us the date of the offense. Give us the date of the conviction. The date of the convictions he omitted. The questionnaire and the voir dire are very different issues. The questionnaire has to do with eligibility for jury service. The voir dire has to do with whether the jury can be fair or impartial. Now, you can bring the two together by asking to see the questionnaire or perhaps basing questions at voir dire on it, but that was never done. That's correct. How can you import the questionnaire into this voir dire argument? I believe that in our briefcase, I believe the case law indicates that the voir dire, the jury questionnaire, is part and parcel of the voir dire because you're trying to get to the truth. The jury questionnaire helps the jury commissioner or administrator to determine if you're eligible pursuant to their rules because they clearly say in section 3 of their rules, if you're a convicted, if you have a case pending, or you're a convicted felon for more than one year, you cannot sit. This gentleman... But Mr. Harwood, I mean, the problem is that he didn't answer untruthfully the question in the qualification questionnaire as to whether he was or was not a felon. He said that he had been convicted of a felony. That is correct. If you had the jury information that had you pursued it, pursued it by way of filing a motion to see the qualification questionnaire, which of course was your option, then you could have pursued it when the actual voir dire was conducted. I think the answer to your question, Judge, I believe the only time you can ask for the jury questions of jurors is after the jury is impaneled. That's my understanding, number one. So when anybody comes to the jury pool, because you've certainly served in the state system, you know that the jury commissioner as well as the jury administrator in federal court, the purpose of their vetting is when the jury pool comes together, the lawyers and the other judges, Judge McConnell, he didn't know, in fact, that the people are eligible. This gentleman, by the fact that he was a convicted felon, was ineligible. So the judge, you're right, Your Honor, maybe I could have followed up some more and asked him, okay, but that brings another problem. If I start asking people at a jury of voir dire, oh, by the way, are you a felon and what's it about? In this case, if you read the Levy case, which was heard in front of Judge Stoltenberg of the Superior Court in Rhode Island and went up to the Supreme, this is a case that's rather unique. There is no way that this man wanted to recite the facts. I think he was intentionally trying to omit certain things to the jury commissioner. When you look at this, you're right. It says February 1995. They didn't check to see whether or not that was the conviction date. It was a charge date. Four years to serve, 18 months at the ACI. That would trigger a felony. Could you have gotten the jury questionnaire if you had asked for it? I couldn't. I got to the jury and selected, Your Honor, but at that point in time. But not before? Not before, Your Honor. Why not? Because we believe in rules. We restrict that. That's my understanding. But even if I did, even if I could have, both state and federal, after many years of trying cases, I would say that the jury pulled when it comes to that. Because let's face it, Judge McConnell was a very savvy trial lawyer himself. If he knew, he would have asked. That's why he said we didn't waive it, because we didn't know about it. Okay. Thank you. Thank you very much. Thank you. Thank you. May it please the court. My name is Kevin Hawley, and on behalf of Gunny and LaFazia, I represent the defendant, Apelli, Hollingsville, Worcester Insurance. There is the ability to request the jury questionnaires. There's case law on that. It's provided for in the Rhode Island jury pool plan. And when can you request it? You can request it at any time after the jury pool has been collected. There was a case that was cited by my brother that says they don't want you to request it solely for the purposes of WADIR. And that's important in this case because there was a three-week gap between when we finished WADIR. Excuse me. What's the purpose of that? Why not permit its use at WADIR? I'm not clear on what the purpose is. I think they can see them. I believe that a lot of times they will redact certain personal information. But I'm not clear what the reason is, because we now had at WADIR the names of these individuals, where they lived, and what their employment was. Right. So my argument is that they're missing the point when they're trying to say they couldn't get the questionnaire. Maybe it would have been harder during the actual WADIR because you would have been using it for WADIR. But when the WADIR was completed on August 4th, we still had three weeks before we were going to start this trial. You could have asked for it the next day. For what purpose? To make sure the jury commissioner vetted people. And to answer Yolanda's question, Judge Lynch, there is, in fact, a case law that addresses the fact that it's not the jury commissioner's job. In fact, the litigants have to do it. And that's Ford v. The United States. It's cited in my brief. It's a Fifth Circuit case, 201, F second, 300. And important to my argument today and to this case, Ford says, and a big piece of what's missing here is, the plaintiffs are saying they didn't know about this until September 15th. In the papers before the underlying judge, they said they received a tip. The lawyer received a tip. But in the papers they filed with this Honorable Court, in the appendix on page, in their brief, they say Mr. Farrier found out about it. So I can't even tell you from their papers who found out about what. But what's important is that Ford case says that the litigant didn't know about the felony status or could not have found out about it with the exercise of diligence. And in Ford, it specifically says, prove war dealer or other means. What's other means? As soon as I found out about this, I punched his name into Google because we had it for three weeks. And it was the first thing that showed up. John R. Juror. I'm obviously not saying his last name. The first thing that shows up. The biggest concern for me is that a nefarious litigant could have that Google search done two days into the three-week period, put it in his back pocket, and now he's got his get-out-of-jail-free card. This is a real risk. Particularly if you buy into Plaintiff's argument that essentially is an automatic retrial. They're saying that if a person is dishonest, you have to find this on the McDonough. It's really a three-part test, I think, is what I would argue. But what the automatic request is, if a felon doesn't tell the truth somewhere, either in his questionnaire or in his voir dire questions, and you use that for the second part of McDonough to be the challenge for cause. Okay, he lied, he didn't tell us he was a felon. That's not this case, mind you. But he lied, didn't tell us he was a felon. Therefore, I have a challenge for cause. I met the second part because I'm going to challenge him because he's unqualified. If you were to allow that, the computers throughout the state of Rhode Island would go haywire because every inmate would then Google the jury list of the people who were on their trial and say, oh, this fellow was a convicted felon. I didn't trial. As a practical matter, as a trial lawyer, do you Google the jury pool once you get the names? I have researched the jurors. I will admit I'm not used to having a three-week period between voir dire and trial. In the Rhode Island State Court, we get breached in Providence County in particular. You don't have time to do anything. Well, half an hour you could do it. You could, and you aren't. It's not me, but if I had, say, a million dollars at stake in a case, and I lost this case and I knew that there was a felon, another important factor in this analysis, Judge McConnell saw everything. He knows everything. He knows a lot more about the individuals involved and the truth and veracity of the juror pool and what took place at that trial. So to erase his... By the way, I apologize. They did not ask for a hearing for Judge McConnell. They specifically said... I heard my brother argue at the end that there should have been a hearing to see about the felons, whether he was being honest or dishonest. But they specifically argued in the memo, which is part of the appendix, on appendix page 20, they told Judge McConnell such a hearing is unnecessary. They knew it was an option. They didn't want it. They could have had one if they asked, but it wouldn't have made a difference. Now, the biggest thing besides my concerns about... I'm not going to exaggerate and say it opens the floodgate, but really, this is harmless error. What difference did it make? If anything, if I had known that there was a felon on this jury, it would have probably been me that might have struck that person. The plaintiff can't even establish a reason why they would have struck that person. The case law is clear. It's not necessarily that they're dishonest. By the way, this gentleman would have been fined. I think in 18 months, he would have been fined. Now, the problem here is, and I respect my brother, Attorney Harwood, and I have tried a case many years ago, and I've always respected him, but he didn't ask the question. It's very simple. You really have to stretch to try to find the answer, to try to find the questions that Mr. Harwood says he asked. When he argued it before Judge McConnell, and it's in the appendix, they argued without the transcript. They didn't have a transcript of the law deal under the first motion. They argued to the judge that he was asked, has anyone testified? He never asked that. They argued in their memo to Judge McConnell, has anyone been a criminal or civil defendant or plaintiff? They never asked that question. They never asked it. All they asked was, have you ever been a juror on a criminal trial or civil trial? And then he exchanged on page 69 and 70 of the appendix, which is, anyone had a claim for personal injuries? And there was an answer. And then he followed up with his one line on page 70, anyone or your brother, your cousin, your sister, any of them, been a party to a case? He's arguing that you should take away this five-day trial and this effort of this jury because, allegedly, that's a false statement that somehow has caused him some problems. The case was ‑‑ So what does this, in terms of a decision that we might write, what does this appeal require us to say, if anything, about the relationship between Varvier and the juror questionnaire? Do we need to ‑‑ I mean, Judge McConnell, as I said earlier, made a finding there was no dishonesty. Is that all we have to address, or do we have to say something about the relationship between Varvier and the questionnaire? You do not need to say anything about the two, as you described, distinct functions. However, Judge McConnell did review the questionnaire and did speak of it. But all you need to look at is page 25 and 26 of the appendix, and it just takes ‑‑ there is no argument here. Yeah, but we do not want a rule that the judge at Varvier should not look at the juror questionnaire. Do you agree with that? I agree with that. There should not be any rule change. It's the plaintiffs who are advocating a change. Basically, what you would rule is we're going to go with Uribe and we're going to say that McDonough slash Uribe is a three‑part test. You have to show a dishonest answer, which didn't happen here, because you're going to give great deference to the trial judge who was calling the balls and the strikes at the time, that it would have been a full cause. But the full cause has to be prejudiced or biased. It has to deny you the fundamental fairness. I'm curious. Why did you say it's more in the defendant's interest to have stricken a felon than it would have been in the plaintiff's interest? In this particular case, Judge, the plaintiff himself is a felon who did two stints in the same prison as the juror who was a foreman. And that was argued before Judge McConnell on ‑‑ may I finish? Yes. That was argued before Judge McConnell on motions in limine. Okay. So that is what really concerns me about having a little ace up your sleeve, almost like a second bite at the apple, that, oh, by the way, I didn't know about this. And we don't really know. And if they were to follow, Your Honors, the one statute, which is 28 U.S.C. 1867, they would have to present an affidavit to establish where the so‑called tip came from and how it affects the outcome of this trial. Lastly, I just have to point out that the questionnaire and the arguments made by the plaintiff are completely illogical. They're arguing that the juror lied on the questionnaire so he could sit on the jury. Well, all you have to do is look at question 14. He wanted to be excused from the jury. He was trying to get out of jury duty. Thank you for your time. I'd ask that you, I respectfully request you to affirm the district court's decision. Thank you. Thank you, counsel.